Craig Mende (cmende@fzlz.com)
James Silberstein (jsilberstein@fzlz.com)
Felicity Kohn (fkohn@fzlz.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
Tel:  (212) 813-5900
Fax:  (212) 813-5901

*Counsel for Plaintiff Snap Interactive, Inc.*

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

SNAP INTERACTIVE, INC.,

                    *Plaintiff*,

             v.

SNAP INC.,

                    *Defendant*.

## COMPLAINT

      Plaintiff Snap Interactive, Inc. ("Snap" or "Plaintiff"), by its undersigned attorneys, for its

Complaint against Defendant Snap Inc. ("Snapchat" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

      1.      In this action, Plaintiff Snap seeks preliminary and permanent injunctive relief as

well as monetary remedies against Defendant Snapchat for its blatant trade name and trademark

infringement and unfair competition under Federal and New York State law.

      2.      Plaintiff Snap is a publicly traded and highly successful global technology

company that creates multi-platform social networking experiences.  Snap's products and

services include a wide array of social networking applications which have been accessed by millions of users around the world.

3.      Since at least as early as 2008, Plaintiff has used SNAP as its company name and trade name (the "SNAP Name") in connection with its online social networking and related services. It also has used the SNAP and SNAP INTERACTIVE marks and a stylized version of SNAP INTERACTIVE shown below (the "SNAP Logo") (collectively, the "SNAP Marks") in connection with these services.



4.      Snap also owns federal registrations for the SNAP Logo and SNAP INTERACTIVE mark.  As a result of its long and uninterrupted use of the SNAP Name and SNAP Marks, Plaintiff has developed substantial goodwill therein.

5.      Notwithstanding the goodwill and renown Plaintiff has developed in the SNAP Name and Marks through its many years of use, without Plaintiff's authorization or permission, Defendant – a purveyor of a social networking mobile application called "Snapchat" that enables users to share images and video clips briefly with friends – has recently announced that it will change its company name from SNAPCHAT INC. to SNAP INC.  Defendant's use of the same or virtually same company name that Plaintiff uses in connection with its social networking services and business will inevitably deceive consumers, including investors and potential investors, into falsely believing that Plaintiff and Defendant are associated in some manner.  The danger of confusion is exacerbated by the timing of Defendant's name change, coming shortly after the recent widely reported merger of Plaintiff and another technology company, Paltalk Holdings, Inc. ("Paltalk"), a leading provider of real-time interactive social networking

{F2071195.8 }

applications.  Evidence of such confusion has already come to light.  Such consumer confusion will irreparably harm Plaintiff's business and diminish the goodwill in the SNAP Name and Marks.

6.      Accordingly, Plaintiff brings this action for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); trademark infringement and unfair competition under the common law of New York; and use of a name with intent to deceive under Section 133 of the New York General Business Law.  As described below, Snap seeks immediate and preliminary injunctive relief, an accounting of Defendant's profits flowing from its use of the infringing company and trade name, damages, attorneys' fees, and such other relief as the Court deems just and proper.

## THE PARTIES

7.      Plaintiff Snap is a corporation duly organized and existing under the laws of Delaware, with offices at 320 West 37th St., 13th Floor, New York, New York 10018.

8.      Upon information and belief, Defendant Snapchat is organized and existing under the laws of Delaware, and headquartered at 8 Brooks Ave., Venice, CA  90291, and has New York offices located at 229 West 43rd St., New York, New York 10036.

## JURISDICTION & VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

{F2071195.8 }

10. This Court has personal jurisdiction over Defendant under Sections 301 and/or 302 of the New York Civil Practice Laws and Rules because, upon information and belief, (i) Defendant continuously and systematically conducts, transacts and solicits business in the State of New York, (ii) Defendant has committed and is committing tortious acts within this State by using the infringing trade name SNAP INC. and marketing, promoting, advertising and offering for sale its social networking and related services under the infringing trade name SNAP INC. within the State of New York and (iii) the events giving rise to this Complaint occurred in the State of New York and/or had effects in this State.

11. Venue is proper in this district pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. §§ 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and (c), in that a substantial part of the events giving rise to the claim, including, but not limited to, Defendant's use of its infringing trade name as well as its marketing, promoting, advertising, and offering for sale its social networking services in violation of Snap's exclusive rights in the SNAP Name and Marks occurred in this District, Plaintiff is suffering harm in this District, and Defendant is subject to personal jurisdiction in this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.**    **Plaintiff Snap and Its SNAP Name and Marks**

12. Plaintiff Snap is a publicly traded company that develops, owns, and operates dating applications for social networking websites and mobile platforms.  Snap has a user database of over 250 million registered users and annual revenues estimated at approximately $30 million.

13. Plaintiff has used the SNAP Name since at least as early as 2008 in connection with its social networking services, including in advertising, in promotional offerings, in press

{F2071195.8 }

releases and public announcements, in SEC filings, and in its commercial relationships with other vendors, including Facebook, Twitter, and LinkedIn, among others.  Snap's website has long referred to the company as "SNAP," including in the description:

> "SNAP is a dynamic, fast-paced technology company creating rich media, multi-platform social experiences such as Paltalk, FirstMet, Camfrog, Tinychat, Grade, & many more."

Plaintiff is likewise referred to as "SNAP" in press coverage, and on third party websites, which has further solidified consumers' recognition that Plaintiff Snap is the source of its social networking services. Plaintiff has also long used the SNAP Marks in connection with its social networking services, including in the same media outlets in which it has used the SNAP Name.

14.     Snap's social media offerings include its FirstMet® dating application launched in 2007 (originally called "AreYouInterested?"), which is one of the most successful dating apps in the history of the industry, with over 100 million Facebook installs, and currently, roughly one million visitors each month.

15.     In addition, Snap recently merged with technology company Paltalk, a leading provider of real-time interactive social networking applications, whose products include one of the world's largest collections of video-based communities, with live group conversations on topics that include politics, financial markets, music, and dating.

16.     There has been extensive media coverage of the recent Snap and Paltalk merger, including in national publications such as *Yahoo! Finance*, *MarketWired* (part of NASDAQ), *Market Watch*, the *Wall Street Journal*, and *Bloomberg*.  Such articles regularly refer to Plaintiff as SNAP. Examples are attached as **Exhibit A**.

17.     As a result of Plaintiff's extensive use and substantial investment in promotion of its SNAP Name and Marks and its associated products and services over many years, as well as

{F2071195.8 }

the extensive press coverage of its business and offerings, the SNAP Name and Marks have acquired substantial value.  Moreover, they distinguish Plaintiff and its business, goods and services exclusively and uniquely.

18.     In addition to the rights built up through its extensive use of the SNAP Marks, Plaintiff is the owner of U.S. Trademark Reg. No. 4,111,563 for the SNAP Logo, and Reg. No. 4,111,564 for SNAP INTERACTIVE, both in connection with "on-line social networking services" in International Class 45.  The above-listed registrations are valid, subsisting, in full force and effect and have become incontestable and therefore constitute conclusive evidence of the validity of the marks and of Plaintiff's ownership and exclusive right to use and authorize use of the marks in connection with the identified services pursuant to Section33(b) of the Lanham Act, 15 U.S.C. § 1115(b).  Attached hereto as **Exhibit B** are true and correct copies of the above-listed registrations.  As a matter of law, these registrations constitute notice to Defendant of Plaintiff's rights in the SNAP Logo and SNAP INTERACTIVE mark in connection with the registered services.  *See* 15 U.S.C. § 1072.

**B.     Defendant's Wrongful Activities**

19.     Like Plaintiff, Defendant provides multi-platform social networking services. Defendant is primarily known for the SNAPCHAT branded mobile application through which users can share images and videos for a brief time before such images and videos disappear.

20.     Defendant recently decided to change the name of its company from SNAPCHAT INC. to SNAP INC., purportedly because the company plans to branch out into new products and services.  The company's decision to change its name to SNAP INC. has engendered considerable press coverage.

{F2071195.8 }

21.     Defendant's newly adopted SNAP INC. trade name incorporates Plaintiff's SNAP Name in its entirety, is shortened to SNAP alone in press coverage and other public references to the company, and is confusingly similar to Plaintiff's SNAP Name and Marks.  Further, Defendant is using the infringing trade name in connection with social networking services that overlap with and/or are closely related to Plaintiff's services.

22.     Defendant is not associated or affiliated with Plaintiff and has never been authorized or otherwise licensed to use the SNAP Name as its trade name, or in connection with the operation of its business or the promotion, sale, or offering for sale of any goods or services.

23.     The goods and services Defendant offers under the SNAP INC. trade name are not provided or approved by Plaintiff.

24.     Nor are Plaintiff's goods and services offered under the SNAP Name and Marks provided or approved by Defendant, although consumers may well mistakenly conclude the opposite in light of Defendant's adoption of SNAP INC. as its trade name.

25.     Defendant's adoption and use of SNAP INC. began many years after Plaintiff first began using the SNAP Name and Marks in connection with social networking services, and long after those marks became associated exclusively with Plaintiff.

26.     Defendant's use of SNAP INC. as a trade name will lead consumers of Defendant's products and services to believe, mistakenly, that Defendant's company is part of a joint venture between Plaintiff and Defendant, that Defendant's company is related to or is the same company as Plaintiff, or that Defendant's goods and services offered under the SNAP INC. name come from or are approved or authorized by Plaintiff –and/or that Defendant is the source of Plaintiff's products and services (*i.e.*, reverse confusion).

{F2071195.8 }

27.     This marketplace confusion is particularly likely given Defendant's widely publicized news that it changed its company name because it intends to expand its portfolio of products and services.

28.     The danger of confusion is further heightened by recent reports that Defendant is preparing for an initial public offering expected to value the company at $25 billion or more, meaning that publicity around Defendant – under its new SNAP INC. name – will only increase during the next year.  Defendant's use of the SNAP INC. name will lead consumers and investors to associate the SNAP name in the social media space with Defendant rather than with Plaintiff.

29.     Accordingly, the goodwill that Plaintiff has built up in its SNAP Name and Marks in the social networking field through years of substantial investment and effort is being usurped by Defendant, which has misappropriated the SNAP Name to refer to itself and its business and to sell and advertise its own products and services.

30.     Plaintiff is being irreparably harmed by Defendant's use of the SNAP INC. trade name or confusingly similar variations thereof to refer to its business and to sell and advertise its own products and services.

31.     Defendant's acts are likely to injure Plaintiff's goodwill and reputation by unfairly and unlawfully wresting from Plaintiff control over its valuable SNAP Name and Marks. Plaintiff has no control over the quality of Defendant's products or services.  As a result, Plaintiff's extremely valuable reputation is being put in jeopardy and may be permanently damaged.  This risk to Plaintiff's reputation has the potential to be particularly damaging now, in light of Plaintiff's recent high-profile merger with Paltalk and the resulting press coverage

{F2071195.8 }

touting Plaintiff Snap's online video conferencing capabilities.  Its reputation is crucial to the success of that ongoing venture.

32.     Defendant's unauthorized acts as described herein have caused and will continue to cause irreparable damage to Plaintiff's business and goodwill unless preliminarily and permanently restrained by this Court.

**FIRST CLAIM FOR RELIEF:**
**FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))**

33.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

34.     Defendant's use of SNAP INC. as a trade name for goods and services that are identical or related to those offered by Plaintiff under its SNAP Name and Marks constitutes a false designation of origin and a false representation as to the origin of Defendant's goods and services.  Defendant's use of SNAP INC. as a trade name in connection with its social networking and related goods and services is likely to cause confusion, mistake, or deception as to the source of Defendant's goods and services and is likely to create the false impression that those goods and services are authorized, sponsored, endorsed, licensed by, or affiliated with Snap, or that Snap is the source of Defendant's products or services–and/or that Defendant is the source of Plaintiff's products and services (*i.e.*, reverse confusion).

35.     Defendant's conduct is willful and violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

36.     Defendant's conduct has caused and is causing irreparable injury to Snap and will continue both to damage Snap and deceive the public unless enjoined by this Court.

37.     Snap has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF:**
**FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))**

38.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

39.     Defendant's offering, advertising and providing of social networking and related services under the SNAP INC. trade name is likely to cause confusion, mistake or deception as to the source or sponsorship of Defendant's and/or Plaintiff's goods and services.

40.     As a result of Defendant's unauthorized use of a trade name that is confusingly similar to Plaintiff's federally registered SNAP Marks, consumers are likely to believe that Defendant's social networking and related goods and services have been approved by or are otherwise associated with Snap, or that Snap is the source of Defendant's product or services -- and/or that Defendant is the source of Plaintiff's products and services (*i.e.*, reverse confusion).

41.     Such use falsely represents Defendant as being legitimately connected with and/or authorized by Snap and places beyond Snap's control its own reputation and ability to control the use of the federally registered SNAP Marks or the quality of the products and services bearing those marks.

42.     Defendant's infringement of Snap's registered marks is willful and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

43.     Defendant's aforesaid conduct is causing irreparable injury to Snap and to its goodwill and reputation, and will continue both to damage Snap and deceive the public unless enjoined by this Court.

44.     Snap has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF:**
**TRADEMARK INFRINGEMENT AND**
**UNFAIR COMPETITION UNDER NEW YORK COMMON LAW**

45.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

{F2071195.8 }

46.     Defendant's use of SNAP INC. as a trade name in connection with its social networking and related products and services is likely to confuse the public as to the origin, source or sponsorship of Defendant's and/or Plaintiff's products and services, or to cause mistake or to deceive the public into believing that Defendant and/or its products or services are authorized, sponsored, endorsed, licensed by, or affiliated with Snap and/or its products or services, in violation of Snap's rights in the SNAP Name and Marks under the common law of the State of New York.

47.     Upon information and belief, Defendant chose the trade name SNAP INC. with full knowledge of Snap's prior use of and rights in the SNAP Name and Marks.  By adopting and using a trade name that is confusingly similar to Plaintiff's SNAP Name and Marks, Defendant has appropriated the goodwill and business reputation represented by Plaintiff's SNAP Name and Marks, thereby harming Plaintiff.

48.     Defendant's conduct constitutes unfair competition and trademark infringement under the common law of the State of New York.

49.     Defendant's conduct has caused and is causing irreparable injury to Snap and will continue both to damage Snap and deceive the public unless enjoined by this Court.

50.     Snap has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF:
### <u>VIOLATION OF SECTION 133 OF N.Y. GENERAL BUSINESS LAW)</u>[1]

---

[1] "No person, firm or corporation shall, with intent to deceive or mislead the public, assume, adopt or use as, or as part of, a corporate, assumed or trade name, for advertising purposes or for the purposes of trade, or for any other purpose, any name, designation or style, or any symbol or simulation thereof, or a part of any name, designation or style, or any symbol or simulation thereof, which may deceive or mislead the public as to the identity of such person, firm or corporation or as to the connection of such person, firm or corporation with any other person, firm or corporation . . . Whenever there shall be an actual or threatened violation of this section, an application may be made to a court or justice having jurisdiction to issue an injunction, upon notice to the defendant **of not less than five days**, to enjoin and restrain such actual or threatened violation; and if it shall appear to the satisfaction of the court or justice that the defendant is in fact assuming, adopting or using such name, or is about to assume, adopt or use such name, and that the assumption, adoption or use of such name may deceive or mislead the public, an injunction

{F2071195.8 }

51.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

52.    Defendant has adopted Plaintiff's SNAP Name as part of Defendant's SNAP INC. trade name for advertising purposes and/or for the purposes of trade.

53.    Defendant's adoption of Plaintiff's SNAP Name as part of its trade name was with the intent to deceive or mislead the public.

54.    Defendant's adoption of Plaintiff's SNAP Name as part of its trade name is likely to deceive or mislead the public as to the true identity of Defendant.

55.    By reason of the acts set forth above, Defendant has violated Section 133 of the New York General Business Law.

*        *        *

**WHEREFORE**, Plaintiff respectfully demands judgment as follows:

**1)**    That a preliminary and permanent injunction be issued enjoining Defendant, and any of its officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all those persons in concert or participation with any of them, and any entity owned or controlled in whole or in part by Defendant, in any jurisdiction in which it operates, from:

(a)    imitating, copying, or making unauthorized use of the SNAP Name and any of the SNAP Marks, and/or any simulations, reproductions, copies, colorable imitations or confusingly similar variations thereof including but not limited to SNAP INC. (any such name or mark, a "Prohibited Name"; the term "Prohibited Name" does not include the name Snapchat or variations thereof, such as Snap Chat or Snap Chat, Inc., which are not the subject of Plaintiff's

---

may be issued by said court or justice, enjoining and restraining such actual or threatened violation without requiring proof that any person has in fact been deceived or misled thereby." (Emphasis supplied).

{F2071195.8 }

claims), in or as part of any corporate name, domain name, trade name, business name or fictitious name, or otherwise presenting any name that includes in whole or in part a Prohibited Name on or in connection with any goods, businesses or services offered by Defendant or the advertising or promotion thereof;

(b)     using a Prohibited Name to refer to or describe any products, goods or services offered by or on behalf of Defendant or any individual, entity or other third party affiliated with Defendant;

(c)     using a Prohibited Name in or as part of any domain name, URL, keyword, metatag, source code or other Internet search term, or otherwise using a Prohibited Name on or in connection with any website owned or controlled by Defendant;

(d)     applying to register or registering in in any Office or registry, any Prohibited Name;

(e)     using a Prohibited Name in connection with the promotion, advertisement, sale, offering for sale or the provision of any goods or services;

(f)     engaging in any other activity constituting unfair competition with Plaintiff or constituting an infringement of Plaintiff's SNAP Name or any of Plaintiff's SNAP Marks; or

(g)     instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

**2)**     Directing that Defendant deliver up to Plaintiff's attorneys for destruction all goods, labels, tags, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials currently in its possession or under its control, incorporating, featuring or bearing any Prohibited Name.

{F2071195.8 }

**3)**     Directing that Defendant disable and transfer to Snap the *snap.com* domain name.

**4)**     Directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any service offered or promoted by Defendant is authorized by Plaintiff or related in any way to Plaintiff or that Defendant is otherwise affiliated with Plaintiff.

**5)**     Directing that Defendant file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which it has complied with the above.

**6)**     Awarding Plaintiff such damages it has sustained or will sustain by reason of Defendant's acts of trade name infringement, trademark infringement and unfair competition.

**7)**     Awarding Plaintiff all gains, profits, property and advantages derived by Defendant from its unlawful conduct and, pursuant to 15 U.S.C. § 1117, awarding Plaintiff an amount up to three times the amount of actual damages sustained as a result of Defendant's violation of the Lanham Act.

**8)**     Awarding to Plaintiff exemplary and punitive damages to deter any further willful trademark infringement as the Court finds appropriate.

**9)**     Awarding to Plaintiff its costs and disbursements incurred in this action, including reasonable attorneys' fees.

**10)**     Awarding to Plaintiff interest, including pre-judgment interest on the foregoing sums.

**11)**     Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

{F2071195.8 }

Dated: October 25, 2016
New York, NY

Respectfully submitted,

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____

    Craig Mende (cmende@fzlz.com)
    James Silberstein (jsilberstein@fzlz.com)
    Felicity Kohn (fkohn@fzlz.com)
866 United Nations Plaza
New York, New York 10017
(212) 813-5900

*Counsel for Plaintiff Snap Interactive, Inc.*

{F2071195.8 }

# EXHIBIT A



Home | Mail | Flickr | Tumblr | News | Sports | Finance | Celebrity | Answers | Groups | Mobile | More⌄ | Try Yahoo Finance on Firefox »

YAHOO! FINANCE

Search [ Search ]

felicity.kohn

Finance Home   Yahoo Originals   Personal Finance   Tech   Market Data   Industry News   My Screeners **NEW**   My Portfolio

| S&P 500 | Dow 30 | Nasdaq | Crude Oil |
|---|---|---|---|
| 2,138.81 | 18,147.97 | 5,236.39 | 50.31 |
| 2.08 (0.10%) | 19.31 (0.11%) | -10.40 (-0.20%) | -0.48 (-0.95%) |

((•)) US Markets close in 29

# nap Interactive nnounces roposed Merger ith Paltalk

August 11, 2016

NEW YORK, NY--(Marketwired - Aug 11, 2016) - Snap Interactive, Inc. ("SNAP") ( OTCQB : STVI ) today announced that it has entered into a non-binding letter of intent with A.V.M. Software, Inc. (d/b/a "Paltalk") ("Paltalk"), dated June 17, 2016, which describes the general terms and conditions of a proposed merger between Paltalk and Snap. Pursuant to the letter of intent, Paltalk would merge into a newly formed wholly owned subsidiary of SNAP, with Paltalk surviving as SNAP's wholly owned subsidiary. As consideration for the merger, SNAP would issue Paltalk's stockholders a number of shares of SNAP's common stock such that, following the completion of the transaction, Paltalk's stockholders would own a majority of SNAP's outstanding common stock on a fully-diluted basis.

The purpose of the proposed merger is to enlarge SNAP's product portfolio and scale of operations and to enhance liquidity to facilitate future growth. The consummation of the proposed merger is subject to, among other things, due diligence, the execution of a definitive agreement, necessary Board of Directors and stockholder approvals and other customary conditions. There can be no assurance that SNAP and Paltalk will consummate, or fulfill the necessary conditions to consummate, the proposed merger.

If the proposed merger is consummated, the issuance of the shares of SNAP's common stock would be made in accordance with an exemption from the registration requirements of the Securities Act of 1933, as amended (the "Securities Act"), pursuant to Section 4(a)(2) thereof and Regulation D thereunder. Such shares of SNAP common stock would not be registered under the Securities Act and could not be offered or sold without registration unless an exemption from such registration is available.

The information disclosed in this press release is being issued pursuant to and limited by Rule 135c promulgated under the Securities Act and does not constitute an offer to sell, or a solicitation of an offer to buy, any shares of SNAP common stock.

IR Contact:
IR@snap-interactive.com

About Snap Interactive, Inc.

Snap Interactive, Inc. develops, owns and operates dating applications for social networking websites and mobile platforms.

Quote Lookup

Recently Viewed ›

Symbol | Last Price | Change | % Ch

Your dont have any symbols in this list.


LAFAYETTE 148 NEW YORK
SHOP THE FALL COLLECTION ›

What to Read Next



**Moonves needs five years free reign if CBS merged with Viacom: Gabelli**
Reuters



**7 Outrageous Cards For Those With Excelle Credit**
NextAdvisor Sponsored







The contents of our website are not part of this press release, and you should not consider the contents of our website in making an investment decision with respect to our common stock.

Forward-Looking Statements:

This press release contains "forward-looking statements." Such statements may be preceded by the words "intends," "may," "will," "plans," "expects," "anticipates," "projects," "predicts," "estimates," "aims," "believes," "hopes," "potential" or similar words. Forward-looking statements are not guarantees of future performance, are based on certain assumptions and are subject to various known and unknown risks and uncertainties, many of which are beyond SNAP's control, and cannot be predicted or quantified and consequently, actual results may differ materially from those expressed or implied by such forward-looking statements. Such risks and uncertainties include, without limitation: the ability of SNAP and Paltalk to consummate the proposed merger, including the ability to satisfactorily complete due diligence, execute a definitive agreement, obtain necessary approvals and satisfy other conditions to the proposed merger; risks and uncertainties associated with general economic, industry and market sector conditions; SNAP's ability to institute corporate governance standards or achieve compliance with national exchange listing requirements; SNAP's future growth and the ability to obtain additional financing to implement SNAP's growth strategy; SNAP's ability to increase or recognize revenue, decrease expenses and increase the number of active subscribers, new subscription transactions or monthly active users; SNAP's ability to enter into new advertising agreements; SNAP's ability to diversify new user acquisition channels or improve the conversion of users to paid subscribers; SNAP's ability to anticipate and respond to changing user and industry trends and preferences; the intense competition in the online dating marketplace; SNAP's ability to release new applications or derive revenue from new applications; and circumstances that could disrupt the functioning of SNAP's applications. More detailed information about SNAP and the risk factors that may affect the realization of forward-looking statements is set forth in SNAP's filings with the Securities and Exchange Commission ("SEC"), including SNAP's most recent Annual Report on Form 10-K and Quarterly Reports on Form 10-Q. Investors and security holders are urged to read these documents free of charge on the SEC's web site at http://www.sec.gov.

All forward-looking statements speak only as of the date on which they are made. SNAP undertakes no obligation to update any forward-looking statement or statements to reflect events or

10/12/2016    Snap Interactive Announces Proposed Merger With iHookup...

Case 1:16-cv-08313-DLC  Document 1  Filed 10/25/16  Page 19 of 28



| Lender | APR | Rate | Cost and F... |
|--------|-----|------|---------------|
| First Internet Bank | 3.418% | 3.375%<br>at 0.000 pts<br>Wed Oct 12 | Est payment: $1,...<br>Lender fees: $1...<br>NMLS # 424... |
| Sebonic Financial | 3.506% | 3.375%<br>at 1.100 pts<br>Wed Oct 12 | Est payment: $1,...<br>Lender fees: $1... |
| Sebonic Financial | 3.570% | 3.500%<br>at 0.100 pts<br>Wed Oct 12 | Est payment: $1,...<br>Lender fees: $2... |

Product: 30 Year Fixed Refi, All Points
Loan Amount: $260,000
Search Criteria: 20% down, 740+ credit score









NEWS ⌄     INTERVIEWS ⌄     OPINION     EVENTS     REPORTS ⌄     JOBS     CONFERENCE ⌄     VIDEOS



NEWS

# SNAP Closes Merger With Video Chat Room Paltalk









The merger between public dating company SNAP Interactive and video chat room Paltalk has closed.

The deal, which will see Paltalk merge with SNAP and the video chat room surviving as a wholly owned subsidiary of SNAP, was announced back in August.

The merger was structured as a stock-for-stock transaction and intended to qualify as a tax-free reorganisation.

And as a result of the merger, the former Paltalk shareholders now own a majority of SNAP's outstanding common stock on a fully diluted basis.

With the deal, which closed on the 7th October, SNAP also intends to fully repay its 12% senior secured note in the principal amount of $3m.

Speaking about the merger, SNAP CEO Alex Harrington said: "We believe the combination of SNAP and Paltalk will drive performance improvements and present a unique opportunity to capitalize on SNAP's strong operating capabilities and Paltalk's proven commercial track record.

"The alignment brings together an aggregated user database of over 250 million registered users, greater scale and product diversification and a strong balance sheet."

The combined revenues are said to be estimated at $30m, with a balance sheet of around $7.9m of collective cash and equivalents.

With the deal, SNAP plans to use the combined database to cross-sell existing

## DATING STOCK

| | | | |
|------|------|-------|-----------|
| MTCH | 19.4 | +0.18 | (+0.94%) |
| STVI | 0.18 | +0.03 | (+17.65%) |
| LOV  | 1.49 | +0.00 | (+0.00%) |
| DATE | 7.49 | +0.00 | (+0.00%) |

products, as well as use Paltalk's tech to build new live video product features.

MEET        5.45        +0.04      (+0.74%)

The company said it gives SNAP a "next wave" product opportunity, incorporating the intersection of dating and real-time video.

In addition to this, SNAP said it creates the possibility to execute "additional acquisitions" of dating businesses.

SNAP's Chairman of the Board Jason Katz said: "The combination of Paltalk's best in class real-time video and chat technology with SNAP's expertise in dating and analytics creates numerous exciting opportunities for the combined company."

Read more about the merger here.

October 10, 2016    —    By Simon Edmunds                         — 0 comments

‹ PREVIOUS POST                                              NEXT POST ›



**SIMON EDMUNDS**

Simon is the editor of Global Dating Insights. Born in Newcastle, he has an English degree from Queen Mary, London and after working for the NHS, trained as a journalist with the Press Association. Passionate about music, journalism and Newcastle United.

LEAVE A REPLY

Name*                Email*               Website

   *

POST COMMENT

**SUBSCRIBE & FOLLOW**

**NEWSLETTER SUBSCRIPTION**

Your email address

SIGN UP

**FIND US ON FACEBOOK**



**RECENT NEWS**

10 Stories Not To Miss On GDI This Week
*OCTOBER 21, 2016*

Amazing Story Of Scam Victim Who Travelled To Nigeria To Meet Scammer Who Conned Her
*OCTOBER 21, 2016*

Happn Launches New LGBTQ

Bullying Awareness Campaign For
#SpiritDay 2016
*OCTOBER 21, 2016*

Breaking Bad Enthusiast Killed Grindr
Date Then 'Dissolved Body In Acid'
Court Hears
*OCTOBER 21, 2016*

Dating Industry Job Vacancies
October 2016
*OCTOBER 21, 2016*



**@GLOBALDATINGINSIGHTS ON INSTAGRAM**

The industry's leading news service

☑ FOLLOW US ON INSTAGRAM

Home

About Us

Contact Us

Team

Cookies Policy

Copyright 2016 Global Dating Insights. All Rights Reserved

# EXHIBIT B

# United States of America

## United States Patent and Trademark Office



**Reg. No. 4,111,563**

**Registered Mar. 13, 2012**

**Int. Cl.: 45**

**SERVICE MARK**

**PRINCIPAL REGISTER**

SNAP INTERACTIVE, INC. (DELAWARE CORPORATION)
363 7TH AVENUE, 13TH FLOOR
NEW YORK, NY 10001

FOR: ON-LINE SOCIAL NETWORKING SERVICES, IN CLASS 45 (U.S. CLS. 100 AND 101).

FIRST USE 1-1-2008; IN COMMERCE 1-1-2008.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "INTERACTIVE", APART FROM THE MARK AS SHOWN.

THE COLOR(S) RED, BLACK AND WHITE IS/ARE CLAIMED AS A FEATURE OF THE MARK.

THE MARK CONSISTS OF THE WORDS "SNAP INTERACTIVE" WITH THE WORD "SNAP" IN A STYLIZED FONT ANGLING UPWARDS IN THE COLOR WHITE OUTLINED IN BLACK INSIDE A SIX-POINTED STAR LOGO WITH A RED BACKGROUND OUTLINED IN BLACK AND THE WORD "INTERACTIVE" IN A SMALLER FONT BELOW IN THE COLOR BLACK.

SER. NO. 85-368,307, FILED 7-11-2011.

JOSETTE BEVERLY, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

---

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

### The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.

---

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.



# United States of America

## United States Patent and Trademark Office

# Snap Interactive

**Reg. No. 4,111,564**

**Registered Mar. 13, 2012**

**Int. Cl.: 45**

**SERVICE MARK**

**PRINCIPAL REGISTER**

SNAP INTERACTIVE, INC. (DELAWARE CORPORATION)
363 7TH AVENUE, 13TH FLOOR
NEW YORK, NY 10001

FOR: ON-LINE SOCIAL NETWORKING SERVICES, IN CLASS 45 (U.S. CLS. 100 AND 101).

FIRST USE 12-17-2007; IN COMMERCE 12-17-2007.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "INTERACTIVE", APART FROM
THE MARK AS SHOWN.

SER. NO. 85-368,311, FILED 7-11-2011.

JOSETTE BEVERLY, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

## REQUIREMENTS TO MAINTAIN YOUR FEDERAL
## TRADEMARK REGISTRATION

### WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

### The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:** Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at http://www.uspto.gov.